Let's take up our last case sentence of oral argument in the Matter of Estate of Perry Meyers. Good afternoon. May it please the court, counsel, my name is Hank Belani. I represent the petitioners in this case, Helen Ursuliv and Alex Myers. There are ten reasons why the executor should have been removed in this particular case. And for those same ten reasons, that is why the trial court erred in not removing him at the citation hearing. The first reason is simply that he failed or attempted to step around the probate act. Meaning he sent all of the heirs and the legatees of the estate a letter, something that he actually had drawn up by an attorney, that was an attempt to administer the estate outside of probate with a scheme to have a common bank account, use a small estate affidavit, and avoid the probate process. And in the emails that were part of the record, he said something to the effect of, you know, this will save money, we don't want to do anything like that. And for other reasons that I will get to, I don't believe that that was the intent behind that at all. But in any event, in doing so, he is basically committing two very egregious acts. One, if he does so, and there are ways to administer an estate outside of probate. If the assets are less than $100,000, or if you have real estate and the real estate is contained in a trust, where you have a deed of transfer or death under Illinois law, you can go outside of probate and that's absolutely correct or fine to do. This was not the case here. There was a will, there was no trust, there was no testamentary trust. There was certainly more than $100,000 in assets and a little more than a million dollars in real estate. So by attempting to avoid the probate procedure, one, the executor is going to have to sign a small estate affidavit, by which he would be perjuring himself. Number two, he is going to be committing tax fraud against the federal government, and the state for that matter, because the tax rate paid by an estate is approximately 20% higher than that of an individual. And so if you have this common bank account, which is referenced in the briefs and was discussed in the testimony, and the form is actually contained in the record, it was an attempt to put everything in his name, let him administer it, and then give out the money after the property has been sold. Number two, there is no evidence that I can find, looking through the accounting in this particular case, that any income tax return was ever filed on behalf of the estate. If you go through the accounting that was filed on February 25, 2014, it's got expenses, income, a number of things. There's a lot of attorney fees. There's a lot of expenses for electric bills, paying to mow the lawn, other things. Nowhere is an accountant hired. Nowhere is there a check in either 2012 or 12, 13, or 14 at that point to the Internal Revenue Service or the state of Illinois. According to the accounting that was filed, the income of the estate in 2012 was a little bit more than $22,000, and in 2013 it was more than $23,000. So if you look at what the tax rates were at that point in time, for an estate that tax rate is 35%. For an individual with that same income amount, the tax rate, effective rate, is 15%. So there's that 20% difference that I talked about earlier. And even though he tried to, again, escape paying any of those taxes by administering the estate outside of probate, even once he got into probate, he's not doing what he's supposed to be doing. What is the standard of review, counsel? Manifest weight of the evidence on the issue of removal. On the issue of the fees, it is – no, I'm drawing in a blanket from all the bits. It's a stricter standard. Abuse? Abuse of discretion, yes, Your Honor. Thank you. The third error was that the executor failed to marshal the assets of the estate. And his excuse for doing so was it simply would cost thousands of dollars to run title searches on mineral rights and property. Helen's fear, which has been presented in both of the briefs filed, all along that there may be federal estate and gift tax issues related to this particular estate. She brought up this concern on numerous times. And every time, and within the record, he refused to acknowledge the tax and refused to say that it was his responsibility. In fact, he testified that, no, that's not my responsibility. I don't have to do that, despite repeated requests. Given the fact that the executor's mother administered his grandfather's estate in 1982, of which the ceding of this estate was inherited, she then declined to act as an executor in this estate, renounced all bequests to her under the will, and that executor attempted to act outside of the law in administering the estate, I think Helen had a pretty good reason to be concerned about the process that this executor was going by to administer this estate. There is no place in the record, and I don't think Helen can find any place, where Helen asked the executor to do anything that was not required of him under the law of the Probate Act. Additionally, and I think I mentioned this in the brief, Helen is a federal employee, and where she's at, in the event that she is found to be complicit in any kind of fraud, again, in this case, I believe tax fraud could very certainly be found, she would lose both her job and her pension. Fourth, well-written, bond is required in independent administration, correctly pointed out by executor's counsel. Executor filed one when he admitted the estate to probate anyway, on May 8th of 2012. In doing so, the bond should have been for an amount twice the value of the personal estate. And I can't find any case law that says anything about what is binding on an executor when he files a bond when no bond is required. Under the Probate Act, under unsupervised administration, a written bond is not required so long as a surety or the bond is excused. In this case, a surety was excused, and the bond shall be two times the value of the personal estate. Regardless of that, the bond was filed, and it was in the amount of $67,456. Now the inventories that were filed and the one accounting that was filed indicated that the value of the personal estate as of the date of death was just under $44,000, so the bond should have been for about $88,000. Independent administration was later terminated in August of 2013. At that point in time, a bond should have been filed. It wasn't. There was testimony at trial that it was an oversight, and then a correct and proper bond was subsequently filed, but never in the beginning. And one of the reasons why I point this out is that the executor throughout the questioning during the trial and in his deposition, I wanted to get a feel for do you know what your duties are? Do you know what you're supposed to do? And there's a lot of testimony in that about the fees that were charged later on as well. And no, nobody told me. I just do what my attorneys tell me. Have your attorneys told you anything that you're supposed to do? No. Can you think of anything? No. And so repeatedly, I'm getting stonewalled. The petitioners are getting stonewalled trying to get things done in an appropriate manner and constantly being told, no, I don't have to do that. No. My attorney didn't tell me I had to do it. But yet he never knew what to do. There was never a list. Those of us that do a lot of estate work, we'll have a list that we'll give our executors and say, these are your responsibilities. Please make sure that you adhere to them. And normally, we'll prepare most of the documents. In this particular case, in this accounting, where the bond was filed, it may not have been required to be filed. It was filed, but it was filed in an inappropriate amount. Again, showing that not only maybe it was the executor not doing what he was supposed to, but counsel at that point in time. And by the way, that is not counsel sitting here at the table today. We are both replacement counsel. But counsel at that point in time, I don't think, really had an appreciation of what the executor's duties were as well. The fifth thing, the inventory that was filed by the executor is incomplete. Other than the money in two bank accounts, there was only a car valued at $1,050 identified on it. There were no furniture, no personal effects, no farm equipment, and additionally, no mineral interests of any kind were identified. Although there was one supplemental inventory filed in October of 2013, and it did list one mineral parcel that had been brought to the executor's attention for leasing at that point. Sixth, the executor failed to file a timely accounting. First brief should have been filed on or before July 8th of 2013. There's no evidence that the executor asked for an extension of time or that one was ever granted. In fact, they talk about a hearing and things going on after that date where an extension was asked. But there is still no indication of that anywhere within the record. Then on August 27th of 2013, the court ordered the executor to file an accounting within three months. And the first and only accounting was filed on February 25th of 2014. And that, again, is important because when you look at it, you see exactly what has been paid, what has not been paid. And I think the accounting itself shows that maybe the executor isn't paying as much attention to his industry in these days as he should be. Number seven, the executor failed to invest any of the money in the estate as required by the prudent person rule. Now, there's a prudent investor rule that's Section 60 of the Probate Act, and that deals with the administration of trusts. The prudent person rule is a much lesser standard. It just simply says that you shall act as a prudent person under similar circumstances would in the administration or the investment of his own personal assets. But in this particular case, he breached even that duty because he failed to invest the money at all. Counsel made a big deal out of it in his brief, saying, well, there was no harm, no foul, no real damages because we didn't prove what the amount of the loss was. But in the reply brief, I pointed out that by executor's own testimony and by documents, e-mails that he sent that were included within the record, he's telling everyone, well, there's time value of money. And by my calculation, this is what is in the estate. And if we drag this out, rather than us investing it, it's not going to get anything. And if it's invested, it's going to be about $3,000 per month. A little bit more than that came out to be about $40,000 per year. So I think damages are proven. But nevertheless, there were cases that I cited, I believe, in both briefs that state very clearly that no harm has to be or damages have to be shown to remove an executor if his conduct is not done in good faith and he's not following his fiduciary duties, neither of which I believe he was doing in this particular case. Ninth – oh, eighth, I'm sorry. Executor paid himself and his attorney during supervised administration without seeking leave of court. This action, as far as I'm concerned, still reflects the executor believes he's above the law and could take whatever action he wants, regardless of what the law is. And what is also troubling in this particular case is that his attorneys cashed four checks that were written out to them, totaling more than $3,000, during that period of time after supervised administration was terminated without again seeking leave of court. Ninth, the executor is constantly shown bad faith. Were those fees approved by the judge? The fees were initially approved. There was an objection to that. The judge removed some of the fees. There was then still a motion pending. That remains pending now at this time in the circuit court. But yes, some of those fees absolutely were approved. The initial award of fees was in the amount of $75. The executor requested 3% of the gross value of the estate per year. The court came up with a number of $75 an hour without really saying anything about how it arrived at that particular figure. This was for the executor's fees? That was for the executor's fees. And the attorney fees are still, part of that is still pending before the court. There has been no final ruling on that at this time. And was this addressed in connection with an objection filed by your client? Yes. Yes, it was. Ninth, the executor is constantly shown bad faith throughout the administration of the estate to Helen and her brother Alex. That was especially clear from some of the excerpts that I added in the reply brief, particularly where he bragged about running up her legal fees and expenses, belittling, berating, making fun of her, basically trying to turn the other members of the family against her and saying she's doing all of this for no good reason. This is just costing us money. Tenth, the executor has negligently, if not intentionally, subjected the legatees to potential taxes, penalties, and interest for failure and his refusal to marshal assets, verify estate and gift tax implications from his mother's handling of his grandfather's estate, and his own failure to file the income tax returns for the estate. So despite the fact Judge Overstreet found that, well, there's really nothing in the record. And I'm not going to argue that what was said in chambers today is appropriately before the court. I mean, some of that is contained in the brief. I'm not arguing for that. But there were discussions held about the assets of the decedent's grandfather that should have passed. At least some percentage were passed to the decedent. When pressed about some of that information and his mother administered that particular estate, he simply said, well, I don't know, and just dodged the questions completely. And I think it is in the record that the grandfather owned 1,220 acres during his lifetime, and more than almost 700 were still in his possession at the time of death. And doing as much estate and gift tax preparation as I do, the calculations are very simple. And it was objected to that I'm not an expert. I'm not holding myself out to be an expert. But the law, the internal revenue code is there for anyone to read. It's pretty straightforward. The gift tax limits at that point in time are $220,000 over 660 acres. In all likelihood, there's going to be a tax, and that tax never does abate. It does not have a statute of limitations where no gift or estate tax was ever filed. That has become a huge concern in this particular case. And I know that was included in the argument portion of your brief. Was any of that in the record in the trial court? Only what I put in the exchange between the executor and I. There was more in the deposition. That was not submitted there. Only the exchange that took place between the executor and I that was included in the reply brief. Again, there were some questions answered and then avoided. There was at this point in time, all I will say is there were reasons that it was not brought forward. Everyone wanted to find out, Judge Overstreet included, what the potential problems we were going to have. And not wanting to put a lot of things on the record. It's past that point at this point in time, unfortunately. And it is an issue. And what do you believe to be the obligation of this executor in evaluating or addressing these potential tax liabilities? And as I understand it, this was the potential tax liabilities created by the decedent's father because of gifts. Yes, the decedent's father, but it's the executor's mother that administered his estate. Did not go through probate in that particular estate as well. But transferred properties, administered the estate outside of probate. And because it all stayed in the family, apparently there were no title issues that arose from any of those transfers. We're going to start seeing those things arise as properties get transferred outside of the family. So what do you, my question, what do you believe the executor, this executor of this estate's obligation would be? I believe it is to protect the heirs and legatees of the estate from any adverse tax consequence. And now there's a complete direct conflict of interest that has evolved because, and I think it's cited in my first brief, but under the tax code, a person who administers an estate, in this case executor's mother, can be held personally responsible if an estate tax is not paid. And it wasn't, and the statute of limitations never told. However, the tax court also has the option of going after the beneficiaries or those that inherit the property at a later time. So unless they pay fair market value for the property, that property, at least the value of it, if not more, is subject to recapture by the federal government. So there's a conflict of interest because it either goes by the estate, the heirs and beneficiaries pay it, or the estate pays it, or it is payable by his mother. Thank you, Counselor. And you'll have the opportunity to rebut. Argument for the appellee. May it please the Court, Counsel. By coincidence, it's been 40 years since I first appeared before this Court. I hope this is not my last time. This has certainly been one of the more interesting trips and we'll take interesting cases. The record sort of speaks for itself. There have been a lot of filings by the appellant, which clearly indicates that she has earned the things that this one bear. It's not our job to make her happy. It's our job to do justice. And the issue before this Court is whether R.J. Bernard should have been removed as executive. As Judge Overstreet noted during some of the proceedings on one or more occasions, some of the problems that have been brought before me could have been solved with a simple phone call. Is there something, some reason why an accounting is not filed? Well, there was. Previous counsel, every reason to understand them. There was no reason to file an accounting because nothing was happening during this transition. Everybody was getting new lawyers and what have you. And we worked that out. So there are reasons for all of these things. Your Honor got to a question of, excuse me, Your Honor, this morning. The burden of proof is on the movement to show that the executor has to be removed. Once they meet that burden, then it becomes our duty to go forward. We never got there. Counsel overrode King's argument this morning, and it's in the record and in the briefs. Most of the mineral law in this state was written here in this room. Of course, I know. It's my dealings with Justice Jones. And it is not uncommon for those of us who have lived in southern Illinois for a long time to know of, have family members who have had minerals they didn't know they owned. The reason this happened is because after the severance of minerals went through, these minerals are not regularly inventory. If inventory costs you a lot of money to find them, then the counties will want to tax them. And lo and behold, the state or federal government would want to assess debt taxes on them. I've practiced probate law a few years, and that's a pattern that's been typical throughout my practice in this state. So for that reason, it hasn't been done in the past. Her insistence on doing this is different than the established practice. There's no law on the subject that I'm aware of, and I'm sure if the counsel for Oklahoma would have pointed this out to the court, he could have found any. So, therefore, that's the reason that this was not done. The question is raised, was there damages to the estate by any conduct of the executor? That's clearly grounds to remove an executor. The testimony was, it's in the briefs, there was a period of time there was about $60,000 in the checking account, collecting some personal property and checking the savings account. Money was not invested because the bank's papers did nothing for short-term money. If you want to place it on a deposit for a year or two, you can get a little interest, a little more significant interest, but then the executor could have been accused of incompetency for locking money up for three years when the estate was ready to close in a year. He chose to do nothing. Certainly not a bad decision when I was a counsel. Counsel raised the point about a higher interest rate. Yes, if you have to borrow money, you will pay 4.5%, 5% for a business loan. That's what's referred to in the documents that counsel did introduce in the record. But that doesn't mean that you're going to get that money. As we pointed out, when more money came in, we finally got some real estate sold. Money was put on deposits, now we're in interest. I do not know where the figure came from of the amount of money the estate earned at any point in time. I don't believe it's in the record, and I don't believe it's an actual number. The exec, one of the points, the ten reasons the exec has raised is the executor did, shortly after the case switched from independent administration to supervised administration, wrote himself a check and wrote at least one check. I heard this afternoon there were four checks, and one's all I know about, to my law firm. He should have got court permission. No question about it. But in the overall scheme of things, it may be more my fault for forgiving and reminding him that it is his fault, but to answer Your Honor's question, the court has approved every cent of those fees, and there's a large sum outstanding right now to my law firm. That's before the court on a proper motion. It wasn't an attempt to pull anything over. It was a routine amount, and it was paid. Is it wrong? Yes. Is it anywhere close to what it takes to remove the executor? Absolutely not, in my opinion. There's some discussion in the ten reasons and several pages of soliloquy and speculation by Mr. Volani about what is or is not tax records and what have you, or tax rates and interest and what have you. Respectfully, that was not in the record and not before the court. The accounting was filed shortly after, I think it was exactly seven days after the last track of real estate was closed. All the records were disclosed, and it was through an understanding between previous counsel for the convenience of the court and counsel that hearings were postponed and were supposed to be done at that time of year. Were those accountings noticed up and then approved by the court? I think they were, Your Honor. It was a routine transaction. I don't remember, and frankly, they don't complain if I can't specifically answer your question. If they weren't approved by the court, I'm sure they would have been objecting to it. I said this is an unusual case because I don't think the facts favor the appellant, and I'm certain that Your Honors will agree with me, I think you will agree, that the law doesn't. In the Kirk case, I read a brief of the Second Circuit way back in 1993, the appellate court said as follows, Petitioners may desire a different executor because they do not like the manner in which the Harris Bank Barrington has proceeded in the probate of their father's estate. An executor may not be removed merely because the beneficiaries of the will might have handled the estate differently and prefer a different executor. Continuing, the petitioning party bears the burden of proof in a prima facie case for removal, not presented evidence that one of these causes establishes grounds reasonable for the removal. I just didn't agree. The other case is even more significant. It's from the Supreme Court. It's a 1978 case. It's the Lucas case. I'm going to get my glass. I'm sure I can read that. Although conceded, there is some possibility that the executor may ultimately be held liable for some of the stock transactions, which resulted in losses to the estate. The record does not support the removal of any of the grounds enumerated in Section 276. That's the predecessor to the current act. It basically says the same thing. The possibility that a surviving executor might have personal liability was not a sufficient basis for discharging as executor. In this case, long ago, the amounts were rather significant. In this case today, they're de minimis in terms of interest on less than $100,000 for a period of less than a year. It's certainly de minimis as a suggestion. This is the best point they have, in my opinion. Absolutely the best. He did invest the money wrong. And I don't think under either case I've sighted a rise anywhere close to that. But if it is, it can be corrected as the Supreme Court hands, by simply surcharging $128 or whatever it is on the final. I took notes of the ten reasons. I think I've covered the only ones that are serious. But if the court has any questions about the ten reasons given by counsel, I'm prepared to answer those questions specifically. Well, thank you, counsel. Thank you, Your Honor. Rebuttal. I'm going to address the few remarks made by counsel. First, there was an attempt to shift the burden to me by stating that I should have, and Judge Overstreet said this very same thing in his docket order, that I simply should have picked up the phone and made a call. That was in reference to an order to show cause that was entered after there was an order for the sale of certain property. About a month after, more than a month after the sale, there was then a supplemental inventory file. There was no report of sale filed with the court, and in the inventory that was filed, there was no indication of any kind that the property had ever been sold. So an order to show cause was prepared. It was presented to Judge Overstreet. He entered the order. And then he didn't know either. The court didn't know. I didn't know. Nobody knew except the executor that the property had been sold. I'm not sure how that arises to bad faith on my part, but that has been the allegation and accusations by the executor against myself and my clients throughout this entire procedure. The executor's, Mr. Sharpe, counsel pointed out that there is a case where the executor was found not to be or should not have been removed. In this particular case, there are ten reasons why the executor should have been removed, and I think every single one of them are relevant. Every single one of them are a breach of his fiduciary duty at a minimum, and some of them I believe may be a breach of law. In any event, the allegations or the actions of the executor should be taken cumulatively, not just individually. We're not looking at just one or two actions, but an entire course of conduct throughout the administration of an estate where there are repeated shortfalls, repeated violations. Had it been one or two, absolutely no. Any one of these, if it was just one or two, I think anyone should and could look past, but it is an ongoing course of conduct that only appears to be getting worse, not better, and for that reason, I believe it is appropriate to remove him. The only other comment that I will make, there was a question as far as whether or not an accounting was ever approved, and no, even to this date, no accounting has ever been approved. It was filed on April, excuse me, February 25, 2014, but it has not been approved by the court. Have there been notice stuff where objections would be allowed to be filed? They've just been filed and nothing's happened. Yeah, we had a hearing on the citation. A petition for citation to remove the executor occurred, was filed. A citation was entered on that, and then the hearing, two-day trial was held subsequent to that, and that's pretty much all that's occurred since that time, other than some issues regarding fees of both executor and attorneys, and most of that still remains pending. Thank you, counsel. We'll take this under advisement. Thank you. Court will be recessed.